Nos. 23-35440, 23-35450

---

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

THE STATE OF IDAHO,

*Defendants-Appellants,*

v.

MIKE MOYLE, et al.,

*Movants-Appellants.*

---

On Appeal from The United States District Court for the
Southern District of Idaho

No. 1:22-cv-00329-BLW
The Honorable B. Lynn Winmill

---

## AMICUS CURIAE BRIEF OF AMERICAN CENTER FOR LAW & JUSTICE IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL

JAY ALAN SEKULOW
  *Counsel Of Record*
STUART J. ROTH
AMERICAN CENTER
FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Fax: (202) 546-9309

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... ii

CORPORATE DISCLOSURE STATEMENT ....................................... 1

INTEREST OF *AMICUS* .......................................................... 1

SUMMARY OF ARGUMENT ..................................................... 2

INTRODUCTION ................................................................... 3

ARGUMENT ......................................................................... 6

    I.   The United States Lacks Statutory Authority to Bring this Suit ................... 7

    II.  The United States Lacks Implied Authority to Bring this Suit ................... 12

CONCLUSION ...................................................................... 16

# TABLE OF AUTHORITIES

**CASES** *Page(s)*

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
    140 S. Ct. 2082 (2020) ........................................................................ 8

*Alexander v. Sandoval*,
    532 U.S. 275 (2001) ........................................................................ 10

*Arizona v. Yellen*,
    34 F.4th 841 (9th Cir. 2022) ........................................................... 8

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
    548 U.S. 291 (2006) ......................................................................... 9

*Armstrong v. Exceptional Child Ctr.*,
    575 U.S. 320 (2015) ............................................................ 8, 9, 11, 12

*Comcast Corp. v. Nat'l Assn. of African American-Owned Media*,
    140 S. Ct. 1009 (2020) .................................................................... 12

*Cummings v. Premier Rehab Keller, P.L.L.C. No. 20-219*,
    142 S. Ct. 1562 (2022) ..................................................................... 9

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002) ....................................................................... 12

*Hernandez v. Mesa*,
    140 S. Ct. 735, 741 (2020) .............................................................. 12

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) (per curiam) .................................................... 6

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................................... 6

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) .................................................................... 7, 9, 10

*New York Times Co. v. United States*,
    403 U.S. 713 (1971) ............................................................................. 12

*Pennhurst State School & Hospital v. Halderman*,
    451 U.S. 1 (1981) ....................................................................... 7, 9, 10

*South Dakota v. Dole*,
    483 U.S. 203 (1987) ............................................................................. 11

*Townsend v. Swank*,
    404 U.S. 282 (1971) ............................................................................... 8

*United States v. Mattson*,
    600 F.2d 1295 (9th Cir. 1979) ................................................. 13, 14, 15

*United States v. City of Philadelphia*,
    644 F.2d 187 (3rd Cir. 1980) ......................................................... 13, 14

*United States v. Solomon*,
    563 F.2d 1121 (4th Cir. 1977) ............................................................. 14

*Winter v. NRDC, Inc.*,
    555 U.S. 7 (2008) ................................................................................... 6

## OTHER AUTHORITIES

David E. Engdahl, *The Spending Power*, 44 Duke L.J. 1, 71 (1994) ...................... 8

iv

## CORPORATE DISCLOSURE STATEMENT

The American Center for Law and Justice is a nonprofit organization that has no parent and issues no stock.

## INTEREST OF *AMICUS*

The American Center for Law and Justice ("ACLJ") is an organization dedicated to the defense of constitutional liberties secured by law. ACLJ attorneys have argued before the Supreme Court of the United States in a number of significant cases involving the freedoms of speech and religion. The ACLJ frequently participates as amicus curiae in state and federal courts in support of the sanctity of human life, *e.g., June Medical Services v. Russo*, 140 S. Ct. 1101 (2020); *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). The ACLJ is equally committed to the constitutional principles of state sovereignty and federalism, both of which are threatened by the United States' unauthorized suit challenging Idaho's sovereign right to establish abortion policy.[1]

---

[1] No counsel for any party authored this brief in whole or in part. No person or entity aside from amicus, its members, or its counsel made a monetary contribution intended to fund the preparation or submission of this brief. All parties consented to the filing of this brief.

1

The ACLJ offers this brief to make two points. The United States lacks both express and implied authority to bring this suit.

## SUMMARY OF ARGUMENT

The United States claims authority under the Supremacy Clause to seek declaratory and injunctive relief against enforcement of Idaho's abortion law because of alleged potential conflict with the requirements of the Emergency Medical Treatment and Active Labor Act (EMTALA). No such authority exists. The United States cannot claim statutory authority under EMTALA because EMTALA's enforcement provisions contain no federal right to equitable relief. The Supremacy Clause does not provide such authority for the simple reason that it provides no independent cause of action. Additionally, because EMTALA is an exercise of Congress's spending power, EMTALA's provisions are contractual in nature and are not binding on the states in the same manner as laws adopted pursuant to Congress's other enumerated powers.

Under controlling Ninth Circuit precedent, the United States also lacks implied authority to bring this suit. The federal government has implied authority to bring suit only in rare situations which do not include the

2

enforcement of spending clause program conditions. What the United States seeks is a grant of unbridled authority that strikes at the heart of separation of powers as well as comity between federal and state governments.

## INTRODUCTION

Congress enacted the Emergency Treatment and Labor Act (EMTALA), commonly known as the "Patient Anti-Dumping Act," in response to the growing concern about the provision of adequate hospital emergency room medical services to the indigent and the uninsured. *Jackson v. E. Bay Hosp*., 246 F.3d 1248, 1254 (9th Cir. 2001). Congress sought to address the practice of hospitals "dumping" patients who were unable to pay for care, either by refusing to provide emergency treatment to these patients, or by transferring the patients to other hospitals before the patients' conditions stabilized. *Id*. (citations omitted). Codified within the Social Security Act, EMTALA's purpose is to condition Medicare/Medicaid funds on state hospital agreements to provide stabilizing medical care to patients with emergency medical conditions regardless of the patient's ability to pay. 42 U.S.C. § 1395dd.

EMTALA does not authorize federal oversight of emergency room medical care. 42 U.S.C. § 1395 (Nothing in this subchapter [including § 1395dd] shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided . . . or to exercise any supervision or control over the administration or operation of any such institution, agency, or person [providing health services]."). EMTALA does not set a "national standard of medical care." *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1258 (9th Cir. 1995). EMTALA requires only that hospitals stabilize indigent patients with the same care afforded to other patients. *See Jackson,* 246 F.3d at 1255. Under EMTALA, the relevant issue is "whether the challenged procedure was identical to that provided similarly situated patients, as opposed to whether the procedure was adequate as judged by the medical profession." *Eberhardt*, 62 F.3d at 1258.

EMTALA does not mandate specific procedures, including abortion. *Id*. § 1395dd(c)(2)(A). It does, however, require stabilizing "the unborn child." 42 U.S.C. §1395dd(c), (e); 42 C.F.R. § 489.24. Additionally, participating

4

hospitals must evaluate and "minimize[] the risk to . . . the health of the unborn child" when transferring the mother to another medical facility. *Id*.

EMTALA provides that state law governs standards of care in private lawsuits for EMTALA violations. *Id*. § 1395dd(d)(2). Congress clearly intended that state law is not preempted unless a State requirement "directly conflicts with a requirement of this section." *Id*. at § 1395dd(f).

EMTALA is enforced jointly through the Health Care Financing Administration (HCFA) and the Office of Inspector General (OIG) of the Department of Health and Human Services.[2]  Violations may result in termination of the hospital's Medicare/Medicaid status.[3]  The statute also

---

[2] EMTALA is enforced through a complaint-based process at the state and federal level.  Complaints are received by a Health Care Finance Administration regional office (RO).  See State Operations Manual: Appendix V – Interpretive Guidelines – Responsibilities of Medicare Participating Hospitals in Emergency Cases, CMS.GOV (Dec. 1, 2021), https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/som107ap_v_emerg.pdf.  The RO authorizes a state survey agency (SA) to investigate the complaint.  If the RO reviews the SA's report and finds that the hospital violated "one or more of the anti-dumping provisions of §1866 or 1867" of the Social Security Act, the RO reports the violation to the Office of the Inspector General of the Department of Health and Human Services (OIG), the Center for Medicare and Medicaid Services (CMS), and the Office of Civil Rights.

[3] *See* Office of Inspector Gen., Dep't of Health & Human Servs., The Emergency Medical Treatment and Labor Act: The Enforcement Process 8 (2001), https://oig.hhs.gov/oei/reports/oei-09-98-00221.pdf.

provides for civil fines not to exceed $ 50,000 per hospital (or $ 25,000 where the hospital has less than 100 beds) for each violation. 42 U.S.C. § 1395dd(d)(1)(A) (1994). Both hospitals and physicians are liable for financial penalties whether they intentionally or negligently violate EMTALA. Additionally, any individual or medical facility directly harmed by an EMTALA violation may sue for punitive damages against the hospital or physician who committed the violation and collect damages for personal harm or financial loss under the applicable state tort law. 42 U.S.C.S § 1395dd (d)(2).

## ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). It should never be awarded as of right, and should only be granted if the movant carries the burden of persuasion and demonstrates "a substantial likelihood of success on the merits." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). Here, the United States cannot carry its burden because it has no authority to bring this lawsuit in the first place.

I.      **The United States Lacks Statutory Authority to Bring this Suit.**

The United States seeks to haul a sovereign state into federal court seeking equitable relief for violations of EMTALA that have not occurred and may never occur.  EMTALA nowhere authorizes the United States to seek equitable relief for current or prospective violations of EMTALA – and for good reason. Spending Clause legislation, such as EMTALA, has no preemptive force under the Supremacy Clause because it is not "law" in the sense that state compliance is constitutionally required.  The Spending Clause power permits the federal government to induce state cooperation with federal policy where Congress's enumerated powers do not allow it to directly compel such cooperation. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576 (2012) ("*NFIB*") (Congress may use Spending power to encourage states to take actions that "Congress could not require them to take"); *College Savings Bank v.  Florida Prepaid Postsecondary Ed. Expense Bd*., 527 U.S. 666, 686 (1999) (same). "The *legitimacy* of Congress' power to legislate under the spending power thus rests on whether the State *voluntarily* and knowingly accepts the terms of the 'contract.'" *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 12 (1981) (emphasis added).

7

Congress may only indirectly regulate state conduct by attaching "strings" to grants of money given to state and local governments. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc*., 140 S. Ct. 2082, 2091 (2020); *Arizona v. Yellen*, 34 F.4th 841, 844 (9th Cir. 2022). But those "strings" are not laws with preemptive force under the Supremacy Clause. They are binding only as contractual obligations, though they are usually codified in statutes or regulations. Thus, there is no private cause of action under the Supremacy Clause for violation of a Spending Clause program condition. *Armstrong v. Exceptional Child Ctr*., 575 U.S. 320, 324 (2015); *see also Townsend v. Swank*, 404 U.S. 282, 292 (1971) (Burger, C.J. concurring) (Spending Clause programs are "in no way mandatory upon the States under the Supremacy Clause. The appropriate inquiry [is]. . . simply, whether the State has indeed adhered to the provisions and is accordingly entitled to utilize federal funds in support of its program."). *See generally* David E. Engdahl, *The Spending Power*, 44 Duke L.J. 1, 71 (1994) (rebutting the "supremacy fallacy" that Spending Clause program conditions are "Laws of the United States" to which the Supremacy Clause applies).

8

Like all Spending Clause legislation, EMTALA operates based on consent. The "legitimacy of Congress' power" to enact EMTALA rests not on its sovereign authority, but on "whether the [recipient] voluntarily and knowingly accepts the terms of th[at] contract." *Pennhurst*, 451 U.S. at 12. Preventing federal coercion of state policy is the reason for the cardinal rule that states cannot voluntarily and knowingly consent to Spending Clause program conditions unless they have been "clearly told" about them. *See, e.g., Cummings v. Premier Rehab Keller, P.L.L.C. No. 20-219*, 142 S. Ct. 1562, 1568 (2022) (holding that emotional distress damages were not recoverable under Spending Clause antidiscrimination statutes because funding recipients were not clearly told that they could be liable for such relief). For the states to be clearly told, program conditions must be set forth "unambiguously." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 304 (2006); *Armstrong*, 575 U.S. at 332. "Respecting this limitation is critical to ensuring that Spending Clause legislation does not undermine the status of the States as independent sovereigns in our federal system." *NFIB*, 567 U.S. at 577. Otherwise, the Spending Clause power would "obliterate distinctions between national and local spheres of interest and power by permitting the Federal Government to set policy in the most sensitive areas of traditional state

9

concern, areas which otherwise would lie outside its reach."). *Id.* at 676 (Scalia, Alito, Kennedy, Thomas, JJ., dissenting) (cleaned up).

Stealth conditions, invented by judges or the Executive branch, and untethered to statutory text, inevitably risk federal coercion of state policy. "Congress's power to legislate under the spending power … does not include surprising participating States with post-acceptance or 'retroactive' conditions."). *Pennhurst*, 451 U.S. at 25; *NFIB,* 567 U.S. at 580 (holding that "post-acceptance" Medicaid expansion provisions exceeded Congress's Spending power because they crossed the line "between encouragement and coercion").

The remedies Congress chose to enforce EMTALA[4] do not include authorization for the federal government to haul sovereign states into federal court seeking equitable relief for violations that have not occurred and may never occur. The "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). Thus, in *Armstrong*, the Court held that Medicaid providers have no right to bring actions for equitable relief to

---

[4] *See infra* notes 1 and 2.

10

enforce a Medicaid provision. "The sole remedy Congress provided for a state's failure to comply with Medicaid's requirements—for the State's 'breach' of the Spending Clause contract—is the withholding of Medicaid funds by the Secretary of Health and Human Services." 575 U.S. at 328. "We have no warrant to revise Congress's scheme simply because it did not "affirmatively" preclude the availability of a judge-made action at equity." *Id*. at 329.

No EMTALA provision clearly and unambiguously authorized federal lawsuits seeking equitable relief against prospective violations that may never occur. The United States' lawsuit is a transparent attempt to use Spending Clause legislation to coerce Idaho's compliance with the administration's preferred abortion policy. Permitting the suit to proceed would turn the noncoercion principle of Spending Clause legislation on its head. There would be no limit on the United States' power to swoop into federal court for the purpose of dictating state policy. The federal government could, for example, bring a suit to enjoin changes in state drinking age limits. *See South Dakota v. Dole*, 483 U.S. 203, 206-207 (1987) (federal highway funds conditioned on

state adoption of minimum drinking age of 21.) This attack on federalism should be repelled.

## II. The United States Lacks Implied Authority to Bring this Lawsuit.

The Constitution does "not provide for government by injunction in which the courts and the Executive Branch can make law without regard to the action of Congress. *New York Times Co. v. United States*, 403 U.S. 713, 742 (1971) (Marshall, J., concurring) (citation omitted). For at least two decades, the Supreme Court has repeatedly declined to recognize a private cause of action that Congress did not expressly authorize to enforce a federal law. *See, e.g., Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002); *Armstrong*, 575 U.S. 320; *Comcast Corp. v. Nat'l Assn. of African American-Owned Media*, 140 S. Ct. 1009, 1015 (2020). The Court firmly grounded these holdings on the principle that implying private rights of action that Congress has not created trenches upon the separation of legislative and judicial power. *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020).

The same principle governs federal claims of implied authority to bring suit for injunctive relief. Implied authority to bring a suit for equitable relief

12

exists only in three situations: 1) to prevent interference with national security; 2) to defend a federal property interest, or 3) to remove a burden on interstate commerce. *See United States v. Mattson*, 600 F.2d 1295, 1299 (9th Cir. 1979) (discussing cases). Thus, even where there are ongoing egregious civil rights violations, the United States does not have implied authority to bring a suit for injunctive relief against state and local government officials. *United States v. City of Philadelphia*, 644 F.2d 187 (3rd Cir. 1980). There, DOJ alleged that the City of Philadelphia, numerous high-ranking officials of the City and its Police Department engaged in a "pattern or practice of depriving persons of rights protected by the due process clause of the fourteenth amendment." *Id*. at 190. The Third Circuit labeled DOJ's assertion of implied authority "an attempt by the federal executive to intervene on a grand scale in the workings of a local government, an area that is manifestly the concern of the states and not the federal government." In poignant language with direct applicability to the United States' suit, Judge Aldisert warned that

> the power which the Attorney General claims in this case is simply not compatible with the federal system of government envisioned by the Constitution. This power, in essence, would permit the Justice Department to bring a civil suit against any state or local administrative body merely because the Attorney General and his subordinates have determined that the defendant's operating policies and procedures violate any one of the civil rights guaranteed to citizens by the

13

> Constitution and laws of the United States. The purpose of such a lawsuit would be to obtain an injunction altering the challenged procedures. Quite literally, there would be no end to the local and state agencies, bureaus, offices, departments, or divisions whose day-to-day operating procedures could be challenged by suit, and changed by injunction.

*Id*. at 200.

The rule against federal implied authority to bring injunctive suits against state governments applies with equal force to spending clause legislation conditions. *Mattson*, 600 F.2d at 1297. *Mattson* involved a DOJ claim of implied authority to bring a suit for injunctive relief to enforce spending clause program conditions intended to protect the rights of the mentally disabled. *Id*. at 1299. The relevant statute's enforcement mechanisms were similar to EMTALA's: the federal government could withhold federal funds for violations; and states could impose state law remedies. *Id*. at 1299-1300. The statute did not expressly authorize the federal government to bring suit. Though acknowledging the federal government's "keen interest" in protecting the rights of the mentally disabled, the court held that interest did not rise to the level necessary to confer implied authority to sue. *Id*; *see also United States v. Solomon*, 563 F.2d 1121, 1129 (4th Cir. 1977) ("considerations of federalism and comity" require rejection of the United

14

States' claim of implied authority to sue to enforce spending clause legislation).

The *Mattson* court held additionally that DOJ failed to meet its burden even under traditional Article III standing rules, because it could not show injury-in-fact. *Id*. at 1300 (The requirement of showing injury in fact "cannot be evaded by an assertion of nonstatutory authority."). For that matter, neither can the United States here.

As the *Mattson* court correctly observed:

> The need to protect the individual branches of government from intrusion is a task not to be taken lightly. Just as any potential abuse of the judiciary must be curbed, any attempt by the executive branch to encroach in an area properly reserved for Congress must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system.

*Id.* at 1301 (cleaned up). The United States' motion for preliminary injunction should be denied and its complaint dismissed.

## CONCLUSION

Amicus requests that this Court reverse the district court and vacate the preliminary injunction.

Respectfully Submitted,

15

/s/ Jay Alan Sekulow

JAY ALAN SEKULOW
   *Counsel of Record*
STUART J. ROTH
AMERICAN CENTER FOR LAW &
JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Fax: (202) 546-9309

16

# CERTIFICATE OF COMPLIANCE

9th Circuit Case No.: 23-35440          (consolidated with 23-35450)

I am the attorney representing Amicus Curiae.

**This brief contains 3,156 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

**Signature** _/s Jay Alan Sekulow_      **Date:** August 14, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2023, I electronically filed a copy of the foregoing *Amicus Curiae* Brief using the ECF System which will send notification of that filing to all counsel of record in this litigation. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 14, 2023


/s/ *Jay A. Sekulow*
Jay A. Sekulow
*Counsel for Amicus Curiae*