Nos. 23-35450 (w/ No. 35440)

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*
v.

THE STATE OF IDAHO,
*Defendant-Appellant,*

*v.*

MIKE MOYLE, Speaker of the House of
Representatives, et al.,
Proposed Intervenor-Defendants,
*Movants-Appellants.*

On Appeal from The United States District Court for the
Southern District of Idaho
The Honorable B. Lynn Winmill, No. 1:22-cv-00329-BLW

*AMICUS CURIAE BRIEF OF AMERICAN CENTER FOR LAW
& JUSTICE IN SUPPORT OF DEFENDANTS-APPELLANTS
AND REVERSAL*

JAY ALAN SEKULOW
  *Counsel Of Record*
STUART J. ROTH
AMERICAN CENTER
FOR LAW & JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Fax: (202) 546-9309

*Counsel for Amicus Curiae*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

CORPORATE DISCLOSURE STATEMENT ........................................1

INTEREST OF *AMICUS* ..........................................................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT ............................................................................................4

THE DISTRICT COURT'S INJUNCTION SWINGS FAR AFIELD OF THE HISTORICAL LIMITS ON THE FEDERAL JUDICIARY'S EQUITABLE POWERS. ...................................5

    A.   *Congress Did Not Authorize Federal Equitable Relief for EMTALA Violations.* ...............................................................................10

    B.   *The United States Has No Implied Authority to Sue under the Supremacy Clause.* ...................................................................14

    C.   *There is No Historical Antecedent for the United States' Suit.* .................16

CONCLUSION .......................................................................................19

# TABLE OF AUTHORITIES

**CASES** *PAGE(S)*

*Alexander v. Sandoval*, 532 U.S. 275 (2001)............................................................13

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) .................................7

*Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011)........................15

*Arizona v. United States*, 567 U.S. 387 (2012)........................................................15

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006)..............11

*Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320 (2015) ................. 13, 14, 15, 16

*Cavanaugh v. Looney*, 248 U.S. 453 (1919)............................................................7

*Comcast Corp. v. Nat'l Assn. of African American-Owned Media*, 589 U.S. 327
   (2020).......................................................................................................16

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022)......................11

*Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) .................1

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)...........................................................16

*Grupo Mexicano De Desarrollo v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999) .........................................................................5, 7

*Hagans v. Lavine*, 415 U.S. 528 (1974)..................................................................15

*Health & Hosp. Corp. v. Talevski*, 599 U.S. 166 (2023)........................................11

*Hernandez v. Mesa*, 589 U.S. 93 (2020)................................................................17

*In re Sawyer*, 124 U.S. 200 (1888) ........................................................................7

*June Medical Services v. Russo*, 591 U.S. 299 (2020) ..............................................1

*Missouri v. Jenkins*, 515 U.S. 70 (1995)..................................................................8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) .................... 10, 11, 12

*New York Times Co. v. United States*, 403 U.S. 713 (1971) ..................................16

*New York v. United States*, 505 U.S. 144 (1992)....................................................12

*NLRB v. P\*I\*E Nationwide, Inc.*, 894 F.2d 887 (7th Cir. 1990)..............................7

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981).................... 10, 12

*South Dakota v. Dole*, 483 U.S. 203 (1987) ...........................................................14

*United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980).................. 6, 17

*United States v. Mattson*, 600 F.2d 1295 (9th Cir. 1979)................................ 17, 18

*United States v. Solomon*, 563 F.2d 1121 (4th Cir. 1977)................................ 17, 18

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ..............................................6

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)......................................5, 7

**STATUTES**

42 U.S.C. § 1395dd(d) ................................................................. 12, 13

42 U.S.C. § 1983 .............................................................................6

42 U.S.C. § 2000h-2 ........................................................................6

52 U.S.C. § 10701(a)(1) ...................................................................6

52 U.S.C. § 10101(c) ........................................................................6

52 U.S.C. § 10308(d) ........................................................................6

52 U.S.C. § 10504 ............................................................................6

52 U.S.C. § 20510 ............................................................................6

Idaho Code § 18-622 (2024) ............................................................4

**OTHER AUTHORITIES**

9 *Papers of Thomas Jefferson* 71 (Julian P. Boyd ed. 1954) .....................8

Aditya Bamzai & Samuel L. Bray, *Debs and the Federal Equity Jurisdiction*, 98 Notre Dame L. Rev. 699 (2022) ......................................................9

Armistead M. Dobie, *Handbook of Federal Jurisdiction and Procedure*, 660 (1928) ................................................................................5

Brutus No. 11, Jan. 31, 1788 ............................................................8

Federal Farmer, No. 15, Jan. 18, 1788, *in* 2 The Complete Anti-Federalist 322 (Herbert Storing ed. 1981) .............................................................8

P.G. Turner, *Rudiments of the Equitable Remedy of Compensation for Breach of Confidence, in Equitable Compensation and Disgorgement of Profit* (Simone Degeling & Jason N.E. Varuhas eds., 2017) ...........................................................7

Robert H. Jackson, *The Struggle for Judicial Supremacy* (1st ed. 1941).................4

The Federalist No. 78, at 528 (Jacob Cooke ed. 1961)..............................................9

## CORPORATE DISCLOSURE STATEMENT

The American Center for Law and Justice is a nonprofit organization that has no parent and issues no stock.

## INTEREST OF *AMICUS*

The American Center for Law and Justice ("ACLJ") is an organization dedicated to the defense of constitutional liberties secured by law. ACLJ attorneys have argued before the Supreme Court of the United States in a number of significant cases involving the freedoms of speech and religion. The ACLJ frequently participates as amicus curiae in state and federal courts in support of the sanctity of human life, *e.g.*, *June Medical Services v. Russo*, 591 U.S. 299 (2020); *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). The ACLJ is equally committed to the constitutional principles of state sovereignty and federalism, both of which are threatened by the Executive Branch's unauthorized suit challenging Idaho's sovereign right to establish abortion policy.

The ACLJ offers this brief to make two interrelated points. The United States lacks both express and implied authority to bring this suit. Therefore, the district court's injunction of Idaho's Defense of Life Act is ultra vires

1

because it exceeds historical limits on the federal judiciary's equitable powers.[1]

## SUMMARY OF ARGUMENT

Unauthorized by the Emergency Medical Treatment and Active Labor Act (EMTALA) or any other federal statute, the district court's injunction of Idaho's Defense of Life Act exceeded historical limits on the federal judiciary's equitable powers. Federal court equity jurisdiction is coextensive with the equity jurisdiction exercised by the High Court of Chancery in England in 1789. In the absence of a statute expanding such jurisdiction, the federal judiciary's power to grant injunctive relief is limited to the protection of proprietary interests, with all other authority left to the states.

These historical limitations protect against the arbitrary and unbounded discretion that was of significant concern in the debates about the inclusion of equity jurisdiction in Article III. Some of the Anti-Federalists who initially objected to such inclusion foresaw the subversion of state sovereignty that has resulted in this case from the abuse of equitable

---

[1] No counsel for any party authored this brief in whole or in part. No person or entity aside from amicus, its members, or its counsel made a monetary contribution intended to fund the preparation or submission of this brief. All parties consented to the filing of this brief.

2

power—the injunction against a sovereign state's law because of a manufactured conflict with spending power program conditions. There is no historical antecedent for such relief.

The Supremacy Clause does not impliedly authorize such injunctive relief. The Supremacy Clause says nothing about who may enforce federal laws, and it creates no causes of action for either private or government parties. Its sole purpose is to guide courts in cases involving conflicts between state and federal law. The notion that the federal government can sue for injunctive relief against the states whenever there might be a difference between state and federal law—especially a provision of spending power legislation—turns federalism on its head.

Federalism concerns undoubtedly undergirded Congress's decision not to authorize federal equitable relief for EMTALA violations. As spending power legislation, EMTALA encourages state cooperation with a federal policy that Congress's enumerated powers do not permit it to mandate. In keeping with the contractual nature of federally imposed conditions, the typical remedy for state noncompliance is termination of federal funding, not coercion of state compliance through federal court injunction. The district court's injunction imports a retroactive stealth

3

condition into EMTALA that crosses the line between encouragement and coercion critical to the constitutionality of spending power legislation.

## ARGUMENT

Displeased with *Dobbs's* return of the abortion issue to the states, the Executive Branch resorted to the equitable powers of the federal judiciary to ensure that Idaho complied with the Executive Branch's preferred pro-abortion policy. The Executive Branch haled Idaho into federal court on the grounds that the Emergency Medical Treatment and Active Labor Act (EMTALA) preempted Idaho's Defense of Life Act.[2] The district court acquiesced without ever considering whether doing so was within its equitable powers. It was not. The historic limitations on the federal judiciary's equitable power exist precisely to prevent such brazen attempts at "government by lawsuit." Robert H. Jackson, *The Struggle for Judicial Supremacy* 286-87 (1st ed. 1941).

First, Congress did not authorize federal equitable relief in EMTALA. Second, the Supremacy Clause does not confer causes of action on any litigant, including the federal government. Third, there is no historical

---

[2] *See* Idaho Code § 18-622 (2024) (prohibiting most abortions with exceptions for rape or incest).

antecedent for the Executive Branch's suit haling a sovereign state into federal court for speculative violations of spending power legislation. The district court therefore exceeded its equitable powers in enjoining Idaho's Defense of Life Act.

### THE DISTRICT COURT'S INJUNCTION SWINGS FAR AFIELD OF THE HISTORICAL LIMITS ON THE FEDERAL JUDICIARY'S EQUITABLE POWERS.

The district court had no power to enjoin Idaho's Defense of Life Act. The federal judiciary's equitable powers are "limited by historical practice." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). Under traditional equitable principles, "no court may 'lawfully enjoin the world at large,' or *purport to enjoin challenged 'laws themselves*.'" *Id.* (emphasis added) (citations omitted).

Unless expanded by Congress, "the equity jurisdiction of the federal courts is the jurisdiction in equity exercised by the High Court of Chancery in England at the time of the adoption of the Constitution and the enactment of the original Judiciary Act, 1789." *Grupo Mexicano De Desarrollo v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999) (quoting Armistead M. Dobie, *Handbook of Federal Jurisdiction and Procedure*, 660 (1928)). An example of Congress's expansion of the judiciary's equitable power is 42 U.S.C. §

5

1983, authorizing injunctive relief against government officers for constitutional violations.[3] In contrast, Congress declined to give the Executive Branch equitable power to enforce the Fourteenth Amendment generally. *See United States v. City of Philadelphia*, 644 F.2d 187, 195 (3d Cir. 1980) (discussing legislative history of Congress's refusal to grant the Executive Branch general injunctive powers to enforce the Reconstruction Amendments and noting that some members of the Judiciary Committee "found it 'truly shocking' that the Attorney General would be 'endowed with the privilege of setting up law through injunction.'") (citations omitted).

Where not expressly authorized by statute, the federal judiciary's power to grant injunctive relief is limited to the protection of proprietary interests. *See, e.g., Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("an injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries

---

[3] Other examples of Congress's expansion of equitable power to enforce various federal rights include 52 U.S.C. § 10701(a)(1) (authorizing actions for injunctive relief to enforce the Twenty-Sixth Amendment); 52 U.S.C. §§ 10101(c), 10308(d), 10504, 20510, (authorizing injunctions to enforce the Voting Rights Act); 42 U.S.C. § 2000h-2 (authorizing intervention in certain federal equal-protection suits).

otherwise irremediable.'") (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)); *In re Sawyer*, 124 U.S. 200, 210 (1888) ("The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property."). *See also* P.G. Turner, *Rudiments of the Equitable Remedy of Compensation for Breach of Confidence, in Equitable Compensation and Disgorgement of Profit* 239, 270 (Simone Degeling & Jason N.E. Varuhas eds., 2017) (stating that "equity only compensates for loss suffered through harm to economic and proprietary interests").

Limits on the equitable powers of the federal judiciary apply no less when the federal government is the plaintiff. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542-45 (1987); *NLRB v. P\*I\*E Nationwide, Inc.*, 894 F.2d 887, 893 (7th Cir. 1990) (Posner, J.) ("The principles of equitable jurisprudence are not suspended merely because a government agency is the plaintiff."). In requiring specific historical antecedents for relief not expressly authorized by Congress, *Grupo* and *WWH v. Jackson* foreclose the equitable power exercised by the district court.

As the Framers recognized, historic limits on the judiciary's equitable powers protect against arbitrary and unbounded discretion. Thomas

7

Jefferson warned that "[r]eliev[ing] judges from the rigour of text law, and permit[ting] them, with pretorian discretion, to wander into it's equity" will result in "the whole legal system becom[ing] uncertain." 9 *Papers of Thomas Jefferson* 71 (Julian P. Boyd ed. 1954). Jefferson's concerns were shared among Anti-Federalists who feared that Article III's inclusion of equity cases in federal court jurisdiction would lead to deviation from the law. "By thus joining the word equity with the word law, if we mean any thing (sic), we seem to mean to give the judge a discretionary power." Federal Farmer, No. 15, Jan. 18, 1788, *in* 2 The Complete Anti-Federalist 322 (Herbert Storing ed. 1981).

Prophetic of the district court's ultra vires injunction in this case, another Anti-Federalist warned that the equity power would result in expansion of federal power to the "subversion of the legislative, executive and judicial powers of the individual states." Brutus No. 11, Jan. 31, 1788, at 420 (quoted in *Missouri v. Jenkins*, 515 U.S. 70, 129 (1995) (Thomas, J., concurring)).

To assuage these concerns, Federalists assured Anti-Federalists that federal court equity powers would be subject to the rules and limits that governed the equity courts in England. For example, Alexander Hamilton

8

explained that equity was not a broad remedial power but instead a limited jurisdiction over certain types of cases. The Federalist No. 78, at 528 (Jacob Cooke ed. 1961). The same "strict rules and precedents" that limited the discretion of the equity courts in England would similarly limit arbitrary discretion in the American federal courts. *Id*. at 529.

Adherence to the historical limits on federal equitable power is essential to preserving federalism and the separation of powers. The traditional equitable limiting principles serve the same function as standing doctrine, ensuring that the plaintiff has a tie to the dispute, establishing the scope of the dispute, and encouraging responsible use of federal equity jurisdiction. Aditya Bamzai & Samuel L. Bray, *Debs and the Federal Equity Jurisdiction*, 98 Notre Dame L. Rev. 699, 734-35 (2022). And if the limiting principles are "stricter and narrower than Article III standing, then that is consistent with how the Supreme Court treats the requirements of equity as additional to and in some sense stricter than those of Article III." *Id*. at 731.

The district court's injunction trespassed on the state's legislative power to regulate the practice of medicine, a traditional police power reserved to Idaho under the Constitution, and expressly not preempted by EMTALA. The Executive Branch's suit was not expressly authorized by

9

Congress, and it has no historical antecedent in equity. The district court therefore had no equitable power to enjoin the Defense of Life Act.

A. *Congress Did Not Authorize Federal Equitable Relief for EMTALA Violations.*

EMTALA nowhere authorizes the Executive Branch to seek equitable relief for current or prospective violations of EMTALA – and for good reason. EMTALA was enacted pursuant to Congress's spending power which permits the federal government to induce state cooperation with federal policy where Congress's enumerated powers do not allow it to directly compel such cooperation. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576 (2012) ("NFIB"). "The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Congress may only indirectly regulate state conduct by attaching conditions to grants of money given to state and local governments. But those conditions are binding only as contractual obligations, and their preemptive force is wholly contingent on the state's acceptance of the terms of the contract. *Id*. The typical remedy for state noncompliance with federally imposed conditions is termination of

federal funding. *Health & Hosp. Corp. v. Talevski*, 599 U.S. 166, 183 (2023).

Avoiding federal coercion of state policy is the reason for the cardinal rule that states cannot voluntarily and knowingly consent to spending power program conditions unless they have been clearly told about them. *See, e.g., Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 215 (2022) (holding that a particular remedy is not available under spending power legislation unless funding recipients were "on notice" of it). For the states to be on notice, program conditions must be set forth "unambiguously." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). "Respecting this limitation is critical to ensuring that Spending Clause legislation does not undermine the status of the States as independent sovereigns in our federal system." *NFIB*, 567 U.S. at 577. Otherwise, the spending power would "obliterate distinctions between national and local spheres of interest and power by permitting the Federal Government to set policy in the most sensitive areas of traditional state concern, areas which otherwise would lie outside its reach."). *Id*. at 676 (Scalia, Alito, Kennedy, & Thomas, JJ., dissenting) (citations omitted).

11

Stealth conditions, invented by judges or the Executive Branch, and untethered to statutory text, inevitably risk federal coercion of state policy. "Congress' power to legislate under the spending power . . . does not include surprising participating States with postacceptance or 'retroactive' conditions." *Pennhurst*, 451 U.S. at 25; *NFIB*, 567 U.S. at 579 (holding that "postacceptance" Medicaid expansion provisions exceeded Congress's spending power because they crossed the line "distinguishing encouragement from coercion.") (quoting *New York v. United States*, 505 U.S. 144, 175 (1992)).

Federal coercion of Idaho's abortion policy is precisely the result of the district court's acquiescence to the Executive Branch's fabrication of federal authority to sue Idaho for injunctive relief. EMTALA contains no such authority.[4] The "express provision of one method of enforcing a

---

[4] EMTALA is enforced jointly through the Health Care Financing Administration (HCFA) and the Office of Inspector General (OIG) of the Department of Health and Human Services. Violations may result in termination of the hospital's Medicare/Medicaid status. The statute also provides for civil fines of up to $50,000 per hospital (or $25,000 where the hospital has fewer than 100 beds) for each violation. 42 U.S.C. § 1395dd(d)(1)(A). Both hospitals and physicians are liable for financial penalties whether they intentionally or negligently violate EMTALA. Additionally, any individual or medical facility directly harmed by an EMTALA violation may sue for punitive damages against the hospital or physician who

substantive rule suggests that Congress intended to preclude others."
*Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). In *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320 (2015), the Court held that Medicaid providers have no right to bring actions for equitable relief to enforce a Medicaid provision. "The sole remedy Congress provided for a State's failure to comply with Medicaid's requirements—for the State's 'breach' of the Spending Clause contract—is the withholding of Medicaid funds by the Secretary of Health and Human Services." 575 U.S. at 328. "We have no warrant to revise Congress's scheme simply because it did not 'affirmatively' preclude the availability of a judge-made action at equity." *Id*. at 329.

No EMTALA provision clearly and unambiguously authorizes federal lawsuits seeking equitable relief against prospective violations that may never occur. The Executive Branch's lawsuit is a transparent attempt to use spending power legislation to coerce Idaho's compliance with the administration's preferred abortion policy. Upholding the district court's ultra vires injunction would eviscerate the noncoercion principle of spending

---

committed the violation and collect damages for personal harm or financial loss under the applicable state tort law. *Id*. § 1395dd(d)(2).

power legislation. There would be no limit on the Executive Branch's power to swoop into federal court for the purpose of dictating state policy. The federal government could, for example, bring a suit to enjoin changes in state drinking age limits. *See South Dakota v. Dole*, 483 U.S. 203, 206-07 (1987) (federal highway funds conditioned on state adoption of minimum drinking age of 21.)

B.     *The United States Has No Implied Authority to Sue under the Supremacy Clause.*

The United States claims authority to sue for injunctive relief under the Supremacy Clause, but no such authority exists. *See Armstrong*, 575 U.S. at 324. The Supremacy Clause merely instructs courts what to do when state and federal law clash and is not the "source of any federal rights." *Id*. More to the point, because the Supremacy Clause says nothing about "who may enforce federal laws in court, and in what circumstances they may do so" the Clause "certainly does not create a cause of action." *Id*. at 325.

Although *Armstrong* addressed whether there could be an implied private right of action under the Supremacy Clause, the Court's reasoning, which focused on the threat to federalism from such a right, applies with greater force to federal suits for injunctive relief.

14

Hamilton wrote that the Supremacy Clause "only declares a truth, which flows immediately and necessarily from the institution of a Federal Government." The Federalist No. 33, p. 207 (J. Cooke ed. 1961). And Story described the Clause as "a positive affirmance of that, which is necessarily implied." 3 Commentaries on the Constitution of the United States §1831, p. 693 (1833). *These descriptions would have been grossly inapt if the Clause were understood to give affected parties a constitutional (and hence congressionally unalterable) right to enforce federal laws against the States.* And had it been understood to provide such significant private rights against the States, one would expect to find that mentioned in the preratification historical record, which contained ample discussion of the Supremacy Clause by both supporters and opponents of ratification.

*Armstrong*, 575 U.S. at 325 (emphasis added). Those "descriptions" would have been further "grossly inapt" in the light of some of the Framers' fears of unbounded federal equity powers.

*Arizona v. United States*, 567 U.S. 387 (2012), does not support the United States' claim of authority under the Supremacy Clause. First, the case predates this Court's decision in *Armstrong*. Second, the federal government's authority to bring suit under the Supremacy Clause was neither briefed nor considered by the Court. "When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011); *Hagans v. Lavine*, 415 U.S.

528, 533 n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."). *Armstrong* therefore controls and requires the conclusion that the Executive Branch does not have implied authority to sue for injunctive relief under the Supremacy Clause.

C.     *There is No Historical Antecedent for the United States' Suit.*

The Executive Branch has not identified any cause of action traditionally available in courts of equity. The Constitution does "not provide for government by injunction in which the courts and the Executive Branch can 'make law' without regard to the action of Congress." *New York Times Co. v. United States*, 403 U.S. 713, 742 (1971) (Marshall, J., concurring). For at least two decades, the Supreme Court has repeatedly declined to recognize a private cause of action that Congress did not expressly authorize to enforce a federal law. *See, e.g., Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002); *Armstrong*, 575 U.S. 320; *Comcast Corp. v. Nat'l Assn. of African American-Owned Media*, 589 U.S. 327, 334 (2020). The Court firmly grounded these holdings on the principle that implying private rights of

16

action that Congress has not created trenches upon the separation of legislative and judicial power. *Hernandez v. Mesa*, 589 U.S. 93, 100 (2020).

The same principle governs federal government claims of implied authority to bring suit for injunctive relief, as federal appeals courts have recognized. *See United States v. Mattson*, 600 F.2d 1295, 1299 (9th Cir. 1979); *United States v. Solomon*, 563 F.2d 1121, 1129 (4th Cir. 1977). *Mattson* and *Solomon* involved DOJ claims of implied authority to bring a suit for injunctive relief to enforce spending power program conditions intended to protect the rights of the mentally disabled. *Mattson*, 600 F.2d at 1299; *Solomon*, 563 F.2d at 1123. The relevant statute's enforcement mechanisms were like EMTALA's,[5] and did not expressly authorize the federal government to bring suit. Though acknowledging the federal government's weighty interest in protecting the rights of the mentally disabled, both circuits held that interest did not rise to the level necessary to confer implied authority to sue for injunctive relief. *Mattson*, 600 F.2d at 1299; *Solomon*, 563 F.2d at 1129.

---

[5] The federal government could withhold federal funds for violations; and states could impose state law remedies. *Mattson*, 600 F.2d at 1299-1300.

> The need to protect the individual branches of government from intrusion is a task not to be taken lightly. Just as any potential abuse of the judiciary must be curbed, any attempt by the executive branch to encroach in an area properly reserved for Congress must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system.

*Mattson*, 600 F.2d at 1301 (cleaned up); *Solomon*, 563 F.2d at 1129 ("considerations of federalism and comity" require rejection of the United States' claim of implied authority). *See also United States v. City of Philadelphia*, 644 F.2d 187, 198 (3d Cir. 1980) (rejecting the United States' claim of implied authority under the Fourteenth Amendment to bring a suit for injunctive relief against state and local government officials, even though there were ongoing egregious constitutional violations. The United States' suit was "an attempt by the federal executive to intervene on a grand scale in the workings of a local government, an area that is manifestly the concern of the states and not the federal government.").

The government's attempt to "intervene on a grand scale" in City of Philadelphia pales in comparison to the Executive Branch's suit here attempting to enjoin a sovereign state's law because of a manufactured conflict with spending power legislation.

18

## CONCLUSION

Amicus requests that this Court reverse the district court and vacate

the preliminary injunction.

Respectfully Submitted,

/s/ Jay Alan Sekulow

JAY ALAN SEKULOW
    *Counsel of Record*
STUART J. ROTH
AMERICAN CENTER FOR LAW &
JUSTICE
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 546-8890
Fax: (202) 546-9309

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 23-35450 and 23-35440

I am the attorney or self-represented party.

**This brief contains** 3,662_____ **words,** including ___0_____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ X ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature:** *s/ Jay Alan Sekulow*___**Date:** September 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2024, I electronically filed a copy of the foregoing *Amicus Curiae* Brief using the ECF System which will send notification of that filing to all counsel of record in this litigation. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 20, 2024


/s/ *Jay A. Sekulow*
Jay A. Sekulow
*Counsel for Amicus Curiae*