**Docket Nos. 23-35440 (L), 23-35450**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

STATE OF IDAHO,

*Defendant-Appellant.*

---

*Appeal from a Decision of the United States District Court for the District of Idaho,*
*No. 1:22-cv-00329-BLW · Honorable B. Lynn Winmill*

---

## *AMICI CURIAE* BRIEF OF ADVANCING AMERICAN FREEDOM, INC., ET AL. IN SUPPORT OF APPELLANT DURING EN BANC BRIEFING
### [ADDITIONAL AMICI CURIAE LIST ON INSIDE COVER]

---

J. MARC WHEAT, ESQ.
TIMOTHY HARPER, ESQ.
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W., Suite 930
Washington, D.C. 20004
(202) 780-4848
mwheat@advancingamericanfreedom.com
timothy@advancingamericanfreedom.com

*Attorneys for Amici Curiae*

---

 COUNSEL PRESS INC. · (213) 680-2300          PRINTED ON RECYCLED PAPER 

**IDAHO FAMILY POLICY CENTER, ADVANCEUSA, AFA ACTION,
ALASKA FAMILY COUNCIL, ALLIANCE FOR LAW AND LIBERTY,
AMERICAN COLLEGE OF PEDIATRICIANS, AMERICAN
CONSERVATIVE UNION FOUNDATION, AMERICAN VALUES,
AMERICANS FOR LIMITED GOVERNMENT, ANGLICANS FOR LIFE,
E. CALVIN BEISNER, PH.D., PRESIDENT, CORNWALL ALLIANCE FOR
THE STEWARDSHIP OF CREATION, CATHOLICS COUNT,
CENTER FOR POLITICAL RENEWAL, CENTER FOR URBAN RENEWAL
AND EDUCATION (CURE), CHRISTIAN LAW ASSOCIATION,
CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS, CONCERNED
WOMEN FOR AMERICA, DELAWARE FAMILY POLICY COUNCIL,
DEMOCRATS FOR LIFE, EAGLE FORUM, FAITH AND FREEDOM
COALITION, FAMILY COUNCIL IN ARKANSAS, FRONTLINE POLICY
COUNCIL, GALEN INSTITUTE, CHARLIE GEROW, GLOBAL LIBERTY
ALLIANCE, HEALING THE CULTURE, HEARTBEAT INTERNATIONAL,
HUMAN COALITION, INTERCESSORS FOR AMERICA,
INTERNATIONAL CONFERENCE OF EVANGELICAL CHAPLAIN
ENDORSERS, JAMES DOBSON FAMILY INSTITUTE, TIM JONES, FMR.
SPEAKER, MISSOURI HOUSE, CHAIRMAN, MISSOURI CENTER-RIGHT
COALITION, LOUISIANA FAMILY FORUM, LUTHERAN CENTER FOR
RELIGIOUS LIBERTY, MEN AND WOMEN FOR A REPRESENTATIVE
DEMOCRACY IN AMERICA, INC., MEN FOR LIFE, MICHIGAN FAMILY
FORUM, MINNESOTA FAMILY COUNCIL, MOUNTAIN STATES LEGAL
FOUNDATION, NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,
NATIONAL RELIGIOUS BROADCASTERS, NEW JERSEY FAMILY
FOUNDATION, NEW JERSEY FAMILY POLICY CENTER, NORTH
CAROLINA VALUES COALITION, PACIFIC JUSTICE INSTITUTE,
PROJECT 21 BLACK LEADERSHIP NETWORK, RHODE ISLAND
FAMILY INSTITUTE, RICK SANTORUM, ROUGHRIDER INSTITUTE,
SAMARITAN'S PURSE, SAVE THE STORKS, SETTING THINGS RIGHT,
60 PLUS ASSOCIATION, STUDENTS FOR LIFE OF AMERICA, TEXAS
RIGHT TO LIFE, THE FAMILY FOUNDATION (TFF) OF VIRGINIA,
THE JUSTICE FOUNDATION, TRADITION, FAMILY, PROPERTY, INC.,
WOMEN FOR DEMOCRACY IN AMERICA, INC., WISCONSIN FAMILY
ACTION, INC., YOUNG AMERICA'S FOUNDATION,
AND YOUNG CONSERVATIVES OF TEXAS**

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The amici curiae Advancing American Freedom, Inc.; Idaho Family Policy Center; AdvanceUSA; AFA Action; Alaska Family Council; Alliance for Law and Liberty; American College of Pediatricians; American Conservative Union Foundation; American Values; Americans for Limited Government; Anglicans for Life; E. Calvin Beisner, Ph.D., President, Cornwall Alliance for the Stewardship of Creation; Catholics Count; Center for Political Renewal; Center for Urban Renewal and Education (CURE); Christian Law Association; Christian Medical & Dental Associations; Concerned Women for America; Delaware Family Policy Council; Democrats for Life; Eagle Forum; Faith and Freedom Coalition; Family Council in Arkansas; Frontline Policy Council; Galen Institute; Charlie Gerow; Global Liberty Alliance; Healing the Culture; Heartbeat International; Human Coalition; Intercessors for America; International Conference of Evangelical Chaplain Endorsers; James Dobson Family Institute; Tim Jones, Fmr. Speaker, Missouri House, Chairman, Missouri Center-Right Coalition; Louisiana Family Forum; Lutheran Center for Religious Liberty; Men and Women for a Representative Democracy in America, Inc.; Men for Life; Michigan Family Forum; Minnesota Family Council; Mountain States Legal Foundation; National Center for Public Policy Research; National Religious Broadcasters; New Jersey Family Foundation; New Jersey Family Foundation; New Jersey Family Policy Center; North Carolina

Values Coalition; Pacific Justice Institute; Project 21 Black Leadership Network; Rhode Island Family Institute; Rick Santorum; Roughrider Institute; Samaritan's Purse; Save the Storks; Setting Things Right; 60 Plus Association; Students for Life of America; Texas Right to Life; The Family Foundation (TFF) of Virginia; The Justice Foundation; Tradition, Family, Property, Inc.; Women for Democracy in America, Inc.; Wisconsin Family Action, Inc.; Young America's Foundation; and Young Conservatives of Texas are nonprofit corporations. They do not issue stock and are neither owned by nor are the owners of any other corporate entity, in part or in whole. They have no parent companies, subsidiaries, affiliates, or members that have issued shares or debt securities to the public. The corporations are operated by volunteer boards of directors.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF INTEREST OF AMICI ............................................. 1

INTRODUCTION .................................................................................. 3

ARGUMENT .......................................................................................... 8

I.    The Department of Health and Human Services' Interpretation of EMTALA Triggers the Major Questions Doctrine Because it Seeks to Settle an Issue of Great Political Significance and Because it Seeks to Intrude into a Specific Domain of State Law ....................................................................................... 9

      *A.*    *The CMS Guidance attempts to resolve a political issue of profound national significance and debate* .......................... 10

      *B.*    *The CMS Guidance represents a significant intrusion into the domain of State law* ...................................................... 12

II.    The Relevant Language of EMTALA Upon Which HHS Relies is Neither a Clear Statement of Authority to Regulate the Politically Contentious Abortion Issue nor a Clear Statement of Authority to Preempt State Law Absent a Direct Conflict ................. 15

CONCLUSION ...................................................................................... 19

CERTIFICATE OF COMPLIANCE ................................................... 20

CERTIFICATE OF SERVICE ............................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Alabama Ass'n of Realtors v. Dep't of Health and Human Servs.*,
   141 S. Ct. 2485 (2021)............................................................10, 12

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
   No. 23-10362, 2024 WL 4196546 (5th Cir. Sept. 16, 2024).........................6

*Biden v. Nebraska*,
   143 S. Ct. 2355 (2023)......................................................................7

*Crosby v. National Foreign Trade Council*,
   530 U.S. 363 (2000)........................................................................14

*Dobbs v. Jackson Women's Health*,
   142 S. Ct. 2228 (2022)..............................................................*passim*

*Fed. Trade Comm'n v. Bunte Brothers, Inc.*,
   312 U.S. 349 (1941).........................................................................18

*Gonzales v. Oregon*,
   546 U.S. 243 (2006).................................................................10, 11

*Goodman v. Sullivan*,
   891 F.2d 449 (2d Cir. 1989) .............................................................16

*Heller v. Doe*,
   509 U.S. 312 (1993)..........................................................................13

*Marshall ex rel. Marshall v. E. Carroll Par. Hosp. Serv. Dist.*,
   134 F.3d 319 (5th Cir. 1998) ........................................................3, 16

*Moyle v. United States*,
   603 U.S. __, 144 S. Ct. 2015 (2024) ...................................................6

*Nat'l Fed. of Indep. Bus. v. Occupational Safety and Health Admin.*,
   142 S. Ct. 661 (2022)...........................................................7, 9, 10, 11

*Planned Parenthood of Southeastern Pennsylvania v. Casey*,
   505 U.S. 833 (1992).........................................................................13

*Roe v. Wade*,
    410 U.S. 113 (1973)..................................................................................4, 11

*Texas v. Becerra,*
    2022 WL 3639525 (Aug. 23, 2022) ...........................................3, 15, 16, 18

*United States v. Idaho*,
    623 F. Supp. 3d 1096 (D. Idaho 2022) ...........................................................6

*Utility Air Regul. Grp. v. Environmental Prot. Agency*,
    573 U.S. 302 (2014)....................................................................................7, 18

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022)............................................................................*passim*

*Whitman v. American Trucking Ass'ns, Inc.*,
    531 U.S. 457 (2001)........................................................................................15

## CONSTITUTIONS

Mass. Const. pt. 1, art. XXX...................................................................................8

U.S. Const. art. I § 1..............................................................................................8

U.S. Const. art. II, § 1, cl. 1 ..................................................................................3

U.S. Const. Art. II § 3 ...........................................................................................8

## STATUTES

42 U.S.C. § 1395....................................................................................................16

42 U.S.C. § 1395dd(a) ...........................................................................................4

42 U.S.C. § 1395dd(b)(1) .......................................................................................4

42 U.S.C. § 1395dd(b)(1)(A)-(1)(B) .....................................................................13

42 U.S.C. § 1395dd(c)(1)(ii)..................................................................................13

42 U.S.C. § 1395dd(c)(1)(A)(ii) .............................................................................4

42 U.S.C. § 1395dd(c)(1)(A)(iii) ............................................................................4

42 U.S.C. § 1395dd(f)............................................................................................13

Idaho Code § 18-622 ................................................................................14

Idaho Code § 18-622(2)(a)-(b) ...............................................................14

**OTHER AUTHORITIES**

87 Fed. Reg. 42,053 (July 8, 2022) ................................................4, 11

Actions - H.R.3128 - 99th Congress (1985-1986): Consolidated Omnibus
    Budget Reconciliation Act of 1985, H.R.3128, 99th Cong. (1986),
    https://www.congress.gov/bill/99th-congress/house-bill/3128/actions ........17

E. Gellhorn & P. Verkuil, *Controlling Chevron-Based Delegations*,
    20 Cardozo L. Rev. 989 (1999) .......................................................8

Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the
    Republican Study Committee* 212 (Green Hill Publishers, Inc. 1983) ...........1

Letter to Health Care Providers, SECRETARY OF HEALTH AND
    HUMAN SERVICES, https://www.hhs.gov/sites/default/files/
    emergency-medical-care-letter-to-health-care-providers.pdf
    (last visited Feb. 9, 2024) ...............................................................5

*Reinforcement of EMTALA Obligations specific to Patients who are
    Pregnant or are Experiencing Pregnancy Loss*, [hereinafter
    "Guidance"] CENTERS FOR MEDICARE & MEDICAID
    SERVICES (July 11, 2022), https://www.cms.gov/files/
    document/qso-22-22-hospitals.pdf (last visited Feb. 13, 2024) ...............5, 16

Ronald Reagan, *Abortion and the Conscience of the Nation*, 38-39
    (Regency Press 2000) (1983) .......................................................17

Thomas Jefferson, Notes on the State of Virginia, Query XIII (1784)
    (reprinted in The Founder's Constitution Vol. I 319 (Philip B.
    Kurland, Ralph Lerner eds., Liberty Fund, 1987) ..........................8

Women's Health Protection Act of 2023, S. 107, 118th Cong.
    § 6(a)(1) (2023) ...............................................................................6

## STATEMENT OF INTEREST OF AMICI

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends policies that elevate traditional American values, including the uniquely American idea that all people are created equal and endowed by their Creator with unalienable rights to life, liberty, and the pursuit of happiness.[1] AAF "will continue to serve as a beacon for conservative ideas, a reminder to all branches of government of their responsibilities to the nation,"[2] and believes that the limits on government power established by the Constitution are necessary for the preservation of the liberty of the people. When the administrative state oversteps its bounds and when the federal government seeks to illegitimately interfere with the authority of the States, the rights of the people are imperiled. AAF files this brief on behalf of its 1,086 members in Idaho and its 21,532 members in the Ninth Circuit.

*Amici* Idaho Family Policy Center; AdvanceUSA; AFA Action; Alaska Family Council; Alliance for Law and Liberty; American College of Pediatricians; American Conservative Union Foundation; American Values; Americans for Limited Government; Anglicans for Life; E. Calvin Beisner, Ph.D., President,

---

[1] No counsel for a party authored this brief in whole or in part. No person other than Amicus Curiae and its counsel made any monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of this amicus brief.

[2] Edwin J. Feulner, Jr, *Conservatives Stalk the House: The Story of the Republican Study Committee* 212 (Green Hill Publishers, Inc. 1983).

1

Cornwall Alliance for the Stewardship of Creation; Catholics Count; Center for Political Renewal; Center for Urban Renewal and Education (CURE); Christian Law Association; Christian Medical & Dental Associations; Concerned Women for America; Delaware Family Policy Council; Democrats for Life; Eagle Forum; Faith and Freedom Coalition; Family Council in Arkansas; Frontline Policy Council; Galen Institute; Charlie Gerow; Global Liberty Alliance; Healing the Culture; Heartbeat International; Human Coalition; Intercessors for America; International Conference of Evangelical Chaplain Endorsers; James Dobson Family Institute; Tim Jones, Fmr. Speaker, Missouri House, Chairman, Missouri Center-Right Coalition; Louisiana Family Forum; Lutheran Center for Religious Liberty; Men and Women for a Representative Democracy in America, Inc.; Men for Life; Michigan Family Forum; Minnesota Family Council; Mountain States Legal Foundation; National Center for Public Policy Research; National Religious Broadcasters; New Jersey Family Foundation; New Jersey Family Foundation; New Jersey Family Policy Center; North Carolina Values Coalition; Pacific Justice Institute; Project 21 Black Leadership Network; Rhode Island Family Institute; Rick Santorum; Roughrider Institute; Samaritan's Purse; Save the Storks; Setting Things Right; 60 Plus Association; Students for Life of America; Texas Right to Life; The Family Foundation (TFF) of Virginia; The Justice Foundation; Tradition, Family, Property, Inc.; Women for Democracy in America, Inc.; Wisconsin Family Action, Inc.; Young

America's Foundation; and Young Conservatives of Texas believe that the liberty of the people depends on the government's operation within the limitations established by the Constitution.

## INTRODUCTION

The Framers of the Constitution believed that power concentrated in the hands of one person or institution represented a significant threat to liberty. The Constitution thus houses the three powers of government in as many branches, setting them in tension with one another to prevent one's usurpation of the power of another. The executive power of the Federal government is "vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. As members of the Executive Branch, administrative agencies are constrained at least by the limitations of the statutes Congress empowers them to enforce.

In 1986, a divided Congress passed, and thereafter President Ronald Reagan signed the Emergency Medical Treatment and Labor Act ("EMTALA") into law. As the district court in *Texas v. Becerra* noted, "The primary purpose of EMTALA is 'to prevent patient dumping, which is the practice of refusing to treat patients who are unable to pay.'" 2022 WL 3639525, at *22 (Aug. 23, 2022) (quoting *Marshall ex rel. Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998)). To accomplish that goal, EMTALA imposes three basic requirements on Medicare-participating physicians and hospitals when a patient enters an emergency

department seeking care. First, they must screen the patient "to determine whether an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). Then they must either provide necessary stabilizing treatment for the person or transfer the individual to another medical facility. 42 U.S.C. § 1395dd(b)(1). Among other requirements, a transfer under section (b) may not occur unless the doctor certifies that the medical benefits of transferring the patient outweigh the increased risks of doing so. 42 U.S.C. § 1395dd(c)(1)(A)(iii). Further, if the emergency situation is labor, the doctor must also consider the risk of the transfer "to the unborn child." 42 U.S.C. § 1395dd(c)(1)(A)(ii).

On June 24, 2022, the Supreme Court issued its opinion in *Dobbs v. Jackson Women's Health*, 142 S. Ct. 2228 (2022), overturning *Roe v. Wade*, 410 U.S. 113 (1973). In response to the *Dobbs* decision, President Biden issued Executive Order 14,076 in which he directed the Secretary of Health and Human Services (HHS) to, among other things, identify ways of ensuring the availability of abortions post-*Dobbs*, even in States that enacted laws to protect the unborn. 87 Fed. Reg. 42,053 (July 8, 2022). Only three days later, on July 11, the Secretary of HHS issued a letter addressed to healthcare providers. The letter conveyed the Secretary's controversial interpretation of EMTALA: that it "protects [health care providers'] clinical judgment and the action that [they] take to provide stabilizing medical treatment to

4

[their] pregnant patients, regardless of the restrictions in the state where [they] practice."[3]

In conjunction with the Secretary's letter, the Centers for Medicare and Medicaid Services (CMS) issued Guidance instructing participating doctors and hospitals that, under EMTALA, they are required to provide abortions as a "stabilizing treatment" or transfer the woman to another medical facility that can do so if they determine that doing so is necessary, even if providing the abortion would contravene State law.[4] The CMS Guidance threatens noncompliant doctors and hospitals with hefty penalties.[5]

Idaho law contained a pro-life provision that was set to go into effect automatically, thirty days after the Supreme Court recognized the authority of the States to regulate abortion. Triggered by the Supreme Court's decision in *Dobbs*, 142 S. Ct. 2228, the law was set to go into effect on August 25, 2022. 2020 Idaho Sess. Laws 827. On August 22, based on its interpretation of EMTALA, the Federal

---

[3] Letter to Health Care Providers, SECRETARY OF HEALTH AND HUMAN SERVICES,
https://www.hhs.gov/sites/default/files/
emergency-medical-care-letter-to-health-care-providers.pdf (last visited Feb. 9, 2024).
[4] *Reinforcement of EMTALA Obligations specific to Patients who are Pregnant or are Experiencing Pregnancy Loss*, [hereinafter "Guidance"] CENTERS FOR MEDICARE & MEDICAID SERVICES (July 11, 2022), https://www.cms.gov/files/document/qso-22-22-hospitals.pdf (last visited Feb. 13, 2024).
[5] *Id*. at 5.

Government sued the State to enjoin enforcement of the law. *United States v. Idaho*, No. 1:22-cv-00329-BLW. The United States District Court for the District of Idaho granted a preliminary injunction on August 24, 2022. *United States v. Idaho*, 623 F. Supp. 3d 1096, 1117 (D. Idaho 2022). After this Court sitting *en banc* later declined to stay the injunction, Idaho filed an emergency application, and the Supreme Court stayed the injunction and granted Idaho's petition for certiorari on January 5, 2024. Order Granting Stay, *Idaho v. United States*, No. 1:22-cv-00329-BLW. However, the Supreme Court later dismissed the writs of certiorari as improvidently granted and vacated the stay on June 27, 2024. *Moyle v. United States*, 603 U.S. __, 144 S. Ct. 2015 (2024).[6]

It beggars belief that EMTALA, directed as it was at providing emergency care for patients unable to afford treatment, enacted by a bipartisan group of senators

---

[6] As Judge Ho of the Fifth Circuit has noted, the Federal Government has shifted its position on whether conscience protections shield doctors from being forced to provide abortions. In the lower courts in both this case and the case in which Judge Ho was writing, the Government claimed that the conscience protections would not apply in this case. *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 23-10362, 2024 WL 4196546, at *3 n.1 (5th Cir. Sept. 16, 2024) (Ho, J., concurring). Then, in both cases, the Government reversed itself before the Supreme Court in a bid to avoid review on the merits, arguing there that conscience protections would apply. *Id*. At the same time, legislation currently before the Senate would likely remove any conscience protections for doctors. Women's Health Protection Act of 2023, S. 107, 118th Cong. § 6(a)(1) (2023).  With the government's inconsistency on this question and the possibility of federal legislation that would intentionally destroy conscience protections for pro-life doctors, this Court should be skeptical about any claim that doctors with conscience objections will be protected under law.

and representatives, signed by President Reagan, and with language designed to protect the interests of both mothers and their unborn children, was all along a Trojan Horse for mandatory abortion even contrary to State law.[7]

As Justice Gorsuch notes, "When an agency claims to have found a previously 'unheralded power,' its assertion generally warrants 'a measure of skepticism.'" *West Virginia v. EPA*,142 S. Ct. 2587, 2623 (2022) (Gorsuch, J., concurring) (quoting *Utility Air Regul. Grp. v. Environmental Prot. Agency*, 573 U.S. 302, 324, (2014)). The Supreme Court has established the major questions doctrine as one check on such claims.

The major questions doctrine requires that an agency act on a clear statutory statement when it seeks either to settle a matter of profound national debate or to intrude into a specific domain of State law. *West Virginia v. EPA*, 142 S. Ct. at 2616 (Gorsuch, J., concurring). After all, "'[e]nabling legislation' is generally not an 'open

---

[7] The Guidance to promote abortion is part of a pattern of Biden-Harris Administration behavior to expand the power of the executive branch beyond its constitutional bounds. Where Congress is unwilling to act on one of the President's policy priorities, the administrative state opportunistically steps in to fill the gap. The Supreme Court has already struck down two notorious examples of this overreach. The first is the Occupational Safety and Health Administration's (OSHA) workplace vaccine mandate which the Supreme Court struck down in 2022 because it exceeded the agency's statutory authority. *Nat'l Fed. of Indep. Bus. v. Occupational Safety and Health Admin.,* 142 S. Ct. 661 (2022). The second, the Biden-Harris Administration's effort to unilaterally cancel student loan debt, was struck down in 2023 for exceeding the Department of Education's statutory authority. *Biden v. Nebraska*, 143 S. Ct. 2355 (2023).

7

book to which the agency may add pages and change the plot line.'" *West Virginia v. EPA*, 142 S. Ct. at 2609 (quoting E. Gellhorn & P. Verkuil, Controlling Chevron-Based Delegations, 20 Cardozo L. Rev. 989, 1011 (1999)). It is the President's responsibility, as the Executive Branch under Article II, to "take Care that the Laws be Faithfully executed." U.S. Const. Art. II § 3. When a presidential administration acts beyond the law as established by Congress, courts have a duty to hold it to account. For these reasons, this Court should rule for Defendants-Appellants.

## ARGUMENT

The 1780 Massachusetts State constitution prohibited each of its government's three branches from exercising the powers of the other two so that, "it may be a government of laws and not of men." Mass. Const. pt. 1, art. XXX. The Framers of the United States Constitution sought to achieve the same goal. Among several mechanisms employed to that end, the Constitution delegates "[a]ll legislative powers" to Congress. U.S. Const. art. I § 1.[8] When the President as the Executive Branch under Article II of the Constitution attempts to apply the law passed by Congress in a way that is inconsistent with the law's language, he usurps

---

[8] As Thomas Jefferson explained in reference to the Virginia Constitution, "The concentrating of [the legislative, executive and judicial powers] in the same hands is precisely the definition of despotic government. It will be no alleviation that these powers will be exercised by a plurality of hands, and not by a single one." Thomas Jefferson, Notes on the State of Virginia, Query XIII (1784) (reprinted in The Founder's Constitution Vol. I 319, 319 (Philip B. Kurland, Ralph Lerner eds., Liberty Fund, 1987).

the power of Congress, creating a government of men (e.g. bureaucrats), and not of laws.

One constraint imposed by the Supreme Court is the major questions doctrine which, when triggered, requires the agency to show a clear statement of authority from Congress for its interpretation and action. *See West Virginia v. EPA*, 142 S. Ct. at 2621 (Gorsuch, J., concurring). Because the Federal Government's proposed interpretation of EMTALA triggers the major questions doctrine and is not based on a clear statement from Congress, this Court should rule for Appellants.

**I.   The Department of Health and Human Services' Interpretation of EMTALA Triggers the Major Questions Doctrine Because it Seeks to Settle an Issue of Great Political Significance and Because it Seeks to Intrude into a Specific Domain of State Law.**

The major questions doctrine, when triggered, requires that the Executive Branch demonstrate that its exercise of regulatory power derives from a clear congressional statement conferring that power. *West Virginia v. EPA*, 142 S. Ct. at 2616 (Gorsuch, J., concurring). In *West Virginia v. EPA*, Justice Gorsuch, in his concurrence, described three situations in which an agency interpretation may trigger the major questions doctrine, two of which are relevant here. *Id*. at 2620-21. First, there must be a clear statement "when an agency claims the power to resolve a matter of great 'political significance,' or end an 'earnest and profound debate across the country,'" *Id*. at 2620 (Gorsuch, J., concurring) (quoting *Nat'l Fed. of Indep. Bus. v. Occupational Safety and Health Admin.*, 142 S. Ct. 661, 665 (2022)

9

[hereinafter *NFIB v. OSHA*]; *Gonzales v. Oregon*, 546 U.S. 243, 267 (2006)). Second, agencies may also need a clear statement from Congress "when an agency seeks to 'intrude into an area that is the particular domain of state law.'" *Id.* (quoting *Alabama Ass'n of Realtors v. Dep't of Health and Human Servs.*, 141 S. Ct. 2485, 2489 (2021)). CMS's interpretation of EMTALA in this case is clearly both related to an issue of great political significance and is intended to intrude into a particular domain of State law.

A.   *The CMS Guidance attempts to resolve a political issue of profound national significance and debate.*

First, the CMS Guidance addresses an issue of great political significance in the United States and thus must be based on a clear statement of authority from Congress. The Supreme Court "has indicated that the [major questions] doctrine applies when an agency claims the power to resolve a matter of great 'political significance,' or end an 'earnest and profound debate across the country,'" *Id.* at 2620 (Gorsuch, J., concurring) (quoting *NFIB v. OSHA*, 142 S. Ct. at 665; *Gonzales*, 546 U.S. at 267). As the majority noted in *Dobbs*, "Abortion presents a profound moral issue on which Americans hold sharply conflicting views." 142 S. Ct. at 2240. Few issues rival the "political significance" of, or generate as much "earnest and profound debate," as does abortion. Abortion is a major factor in every presidential election and, since the overturn of *Roe*, has been debated and legislated on in States throughout the country.

10

The CMS Guidance also seeks to resolve an "'earnest and profound debate across the country,'" *Id.* at 2620 (Gorsuch, J., concurring) (quoting *Gonzales*, 546 U.S. at 267). After the Supreme Court overturned *Roe v. Wade*, 410 U.S. 113 (1973) in *Dobbs*, 142 S. Ct. 2228, returning authority to regulate abortion to the States after almost fifty years, President Biden issued an executive order requiring the Secretary of HHS to find ways to expand abortion in the United States. 87 Fed. Reg. 42,053 (July 8, 2022). The clear purpose of the Executive Order and the ensuing CMS Guidance was to render ineffective State regulations of abortion in cases where pregnant women are experiencing emergency medical conditions. CMS, through its Guidance, seeks to settle the controversy surrounding abortion, at least in certain cases, by fiat.

Further, the CMS Guidance triggers the major questions doctrine even though its implementation would not resolve the abortion debate universally. In *NFIB v. OSHA*, 142 S. Ct. 661, one of the cases identified by Justice Gorsuch as an example of agency action that sought to resolve a significant political matter, OSHA tried to coerce employers into acting as enforcers of an illegitimate vaccine mandate. *See West Virginia v. EPA*, 142 S. Ct. at 2620 (Gorsuch, J., concurring) ("[T]he Court held the doctrine applied when an agency sought to mandate COVID–19 vaccines nationwide for most workers at a time when Congress and state legislatures were engaged in robust debates over vaccine mandates."). Just as the OSHA vaccine

11

mandate would not have applied to all Americans, so the CMS Guidance would not open the door for abortions at any time. Nonetheless, just as the vaccine mandate came at a time when "Congress and state legislatures were engaged in robust debates over vaccine mandates," *Id*. at 2620-21, the CMS Guidance came just as States were able to consider significant regulation of abortion for the first time in half a century. Nor would the major questions doctrine be much of a protection against expansionist interpretations of statutory law if the Executive could avoid the doctrine's limitations merely by reducing the scope of its action. Thus, because the CMS Guidance seeks to resolve a major political issue that engenders profound national debate, this Court should require the Executive Branch to show that its interpretation derives from the authority of a clear congressional statement.

     B.    *The CMS Guidance represents a significant intrusion into the domain of State law.*

Second, the Guidance intrudes into an area that is the particular domain of State law by reinterpreting EMTALA so as to create an appearance of conflict with State law where no genuine conflict exists. The "major questions doctrine may apply when an agency seeks to 'intrude into an area that is the particular domain of state law.'" *Id*. (quoting *Alabama Ass'n of Realtors*, 141 S. Ct. at 2489). States have a legitimate interest in the safety of women and their preborn children; an interest the Supreme Court has recognized for at least three decades. *See Dobbs*, 142 S. Ct. at 2284 ("[States'] legitimate interests include respect for and preservation of prenatal

12

life at all stages of development [and] the protection of maternal health and safety.")
(citation omitted); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505
U.S. 833, 846 (1992). In *Dobbs*, the Supreme Court held that the applicable standard
of review for State laws that restrict abortion is rational basis scrutiny, finding that,
"[a] law regulating abortion, like other health and welfare laws, is entitled to a
'strong presumption of validity.'" *Dobbs*, 142 S. Ct. at 2283-84 (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). Because abortion law falls within the category of
health and welfare regulation, it is within the domain of State regulation.

Further, CMS's interpretation of EMTALA represents a significant intrusion
into that domain of State law because it expands EMTALA's preemption provision
beyond its statutory bounds. EMTALA only preempts State law "to the extent that
the [State] requirement directly conflicts with a requirement of this section." 42
U.S.C. § 1395dd(f). Under EMTALA, if a patient arrives in a hospital emergency
room with an emergency medical condition or in labor, the hospital must either
provide required stabilizing treatment or transfer the patient to another medical
facility that can provide stabilizing treatment. 42 U.S.C. § 1395dd(b)(1)(A)-(1)(B).
In the case of a woman in labor, if she has not been stabilized, the doctor may only
authorize her transfer to another facility if the benefits of doing so would outweigh
the risks to both the woman and the "unborn child." 42 U.S.C. § 1395dd(c)(1)(ii).
Idaho law prohibits the performance of an abortion, with certain circumstances

excepted. Idaho Code § 18-622. Abortions are not illegal to save the life of the mother or, if performed in the first trimester, in cases of rape or incest. Idaho Code § 18-622(2)(a)-(b). This law in no way prevents hospitals from providing the treatment EMTALA requires unless abortion is a form of "treatment;" the very novel interpretation at the center of this case.

Federal law may also preempt State law where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372–73 (2000). The primary purpose of EMTALA was to avoid patient dumping. Yet nothing in the Idaho law in question requires emergency rooms or emergency room doctors to turn away patients for any reason.

Thus, because there is no conflict between Idaho law and EMTALA, EMTALA does not preempt Idaho law in this case. By attempting to override State law in an area recognized by the Supreme Court as one of legitimate State interest, the CMS Guidance intrudes into a particular domain of State law. Under the major questions doctrine, CMS must demonstrate that its interpretation is based on a clear statement of authority from Congress.

**II.    The Relevant Language of EMTALA Upon Which HHS Relies is Neither a Clear Statement of Authority to Regulate the Politically Contentious Abortion Issue nor a Clear Statement of Authority to Preempt State Law Absent a Direct Conflict.**

The CMS Guidance and its interpretation of EMTALA is not based on any clear statement of authority from Congress. When the major questions doctrine applies, agencies must provide more than "a colorable textual basis" for their claims to expanded power. *See West Virginia v. EPA*, 142 S. Ct. at 2609. "Extraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle devices.'" *Id.* (quoting *Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001)). As Justice Scalia said, Congress does not "hide elephants in mouseholes." *Whitman*, 531 U.S. at 468. Justice Gorsuch, concurring in *West Virginia v. EPA*, wrote that the Supreme Court has considered four factors, three of which are relevant here, when determining whether the legislative authority upon which an agency bases its interpretation constitutes a clear statement.

"*First*, courts must look to the legislative provisions on which the agency seeks to rely 'with a view of their place in the overall statutory scheme.'" *West Virginia v. EPA*, 142 S. Ct. at 2622 (Gorsuch, J., concurring) (emphasis in original). CMS's Guidance runs counter to both the purpose of EMTALA and the requirements of the Social Security Act (SSA) generally. As noted by the district court in *Texas v.*

*Becerra*, "The primary purpose of EMTALA is 'to prevent patient dumping, which is the practice of refusing to treat patients who are unable to pay.'" 2022 WL 3639525, at *22 (quoting *Marshall ex rel. Marshall*, 134 F.3d at 322). The Guidance does not advance this goal. Rather, by it, CMS intends to force doctors and hospitals to either provide an abortion or to transfer the woman to another medical facility where an abortion can be performed.[9]

Relatedly, the Guidance directly violates the plain language of the SSA. "EMTALA is subject to the Medicare Act's prohibition that 'nothing in this subchapter,' which includes EMTALA, 'shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided.'" *Texas v. Becerra*, 2022 WL 3639525, at *25 (quoting 42 U.S.C. § 1395). This same court goes on to note that, "Courts across the country uniformly hold that this section prohibits Medicare regulations that 'direct or prohibit any kind of treatment or diagnosis'; 'favor one procedure over another'; or 'influence the judgment of medical professionals.'" *Id*. (quoting *Goodman v. Sullivan*, 891 F.2d 449, 451 (2d Cir. 1989)). Here, CMS has attempted to direct the medical care of pregnant women without

---

[9] Guidance, *supra* note 4, at 4.

regard to the wellbeing of the unborn child and contrary to the overarching requirements of the statutory scheme.

Second, reviewing courts "look to the age and focus of the statute the agency invokes in relation to the problem the agency seeks to address." *West Virginia v. EPA*, 142 S. Ct. at 2623 (Gorsuch, J., concurring). Further, "an agency's attempt to deploy an old statute focused on one problem to solve a new and different problem may also be a warning sign that it is acting without clear congressional authority." *Id*. EMTALA was passed in 1986 by a divided Congress and signed by President Reagan.[10] It is doubtful that such legislation, directed as it was at providing emergency care for patients unable to afford treatment and enacted by a bipartisan group of senators and representatives, signed by President Reagan,[11] and with language designed to protect the interests of unborn children, was really a Trojan horse for mandatory abortion.

---

[10] *See* Actions - H.R.3128 - 99th Congress (1985-1986): Consolidated Omnibus Budget Reconciliation Act of 1985, H.R.3128, 99th Cong. (1986), https://www.congress.gov/bill/99th-congress/house-bill/3128/actions.

[11] If the Biden-Harris Administration's interpretation of EMTALA were correct, would President Reagan have signed it? Recall that President Reagan wrote that "*Roe v. Wade* has become a continuing prod to the conscience of the nation," because he saw that, in the decade between that decision and his writing, "more than 15 million unborn children [had] had their lives snuffed out by legalized abortions," at the time "over ten times the number of Americans lost in all our nation's wars." Ronald Reagan, *Abortion and the Conscience of the Nation*, 38-39 (Regency Press 2000) (1983).

Third, "just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred." *West Virginia v. EPA*, 142 S. Ct. at 2610 (quoting *Fed. Trade Comm'n v. Bunte Brothers, Inc.*, 312 U.S. 349, 352 (1941) (internal quotation marks omitted)). Thus, it is telling that "EMTALA has never been construed to preempt state abortion laws." *Texas v. Becerra*, 2022 WL 3639525, at *28. This effort to expand the meaning of the statute to reach a hot political issue of the day is exactly the sort of overreach that should be checked by the clear statement requirement. As Justice Gorsuch notes, "When an agency claims to have found a previously 'unheralded power,' its assertion generally warrants 'a measure of skepticism.'" *West Virginia v. EPA*, 142 S. Ct. at 2623 (quoting *Utility Air Reg. Grp.*, 573 U.S. at 324).

Therefore, because the CMS Guidance challenged in this case triggers the major questions doctrine, and because it is based not on a clear statement from Congress, but rather on a misreading of the law contrary to the language of the statute and its context, CMS's interpretation of EMTALA to preempt Idaho law in this case is executive and federal overreach. CMS's novel interpretation disregards the statute's concern for unborn life, was issued with no opportunity for criticism or correction, and exists explicitly to advance a policy goal of the President. In short, it

18

is a blatant power grab. This Court should rule for Defendants-Appellants to protect the interests of Idaho and every State in the Ninth Circuit to protect the fundamental rights of those within their jurisdiction.

## CONCLUSION

For the forgoing reasons, this Court should rule for Defendants-Appellants.

Respectfully submitted,

/s/ J. Marc Wheat

J. MARC WHEAT
*Counsel of Record*
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Suite 930
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**  23-35440 (L), 23-35450

I am the attorney or self-represented party.

**This brief contains 4,569 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[XX] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

   [ ] it is a joint brief submitted by separately represented parties.

   [ ] a party or parties are filing a single brief in response to multiple briefs.

   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  /s/ J. Marc Wheat                    **Date** September 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


  /s/ J. Marc Wheat